All right, we will now hear the case of Hunters Run Property Owners versus Centerline Real Estate. Good morning. Good morning. My name is Jay Chambers and I represent the Appellant, Centerline Real Estate. The abuse of discretion standard gives trial courts the ability to choose from a range of appropriate outcomes. If the court stays within that range, its order will not be disturbed on appeal. But here, the district court went far beyond the range of appropriate outcomes when it awarded nearly $400,000 in damages based on evidence that was never disclosed in discovery on an issue that was never mentioned in any pleadings, especially when the Association repeatedly, on the record, said that it would not seek damages in this case. Under the rules of civil procedure, the Association was not allowed to spring a brand new claim for damages on Centerline at the last minute. And by doing so, it deprived Centerline of any chance to take discovery on the an overall litigation strategy that accounts for the risk of that claim. Well, it's not really true that the rules don't allow it. What the rules say is it is allowed, or as I understand the case law interpreting Rule 54C, it is allowed except if it would cause prejudice to a party, correct? Well, I agree with your interpretation of the case law, but I think there is prejudice here. So I think it's not allowed. So let's focus on that, because it's not true that it's not allowed. It is allowed, but it is only allowed if it doesn't prejudice either party. So what prejudice did your client suffer at the eve of the first trial, the motion filed to add damages under Rule 54C? Well, there was no motion to add damages, Your Honor. The motion was to seek declaratory relief. The damages came up two days before trial, when they had initial disclosures. When they asked under Rule 54C to add a monetary damages claim. I don't believe they asked to add a monetary damages claim. I think they only asked for declaratory relief. What they did is they just, in the pre-trial stipulation, listed the amount of damages as one of the issues and disclosed their damage as evidence. They also, in their complaint, they also indicated that they were seeking to have your client pay certain assessments. And I mean, in fairness, obviously, they did disclaim the notion of damages in an exchange with the court, but they also said that they, throughout the entire thing, it was clear that if they won the declaratory judgment they were seeking, they would seek to obtain the money that it would have authorized. I mean, it seems pretty clear from the record that that's what they were doing, right? Well, I think it's clear they were going to do that, but I think it's also clear from the record and from the legal theory that they pleaded in their complaint that that would be operating on a prospective basis. Now, the legal theory in the complaint was that Centerline was not a member of the association and was not a member of the country. If that's true, though, and I agree, my writing in the record is the same as Judge Rosenbaum's. If that's true and it would be prospective, that doesn't mean it's not in the hunt. I mean, that doesn't mean money damages are irrelevant or not something that you would seek discovery on or is a big surprise that this came up. And I would add to Judge Rosenbaum, if you look at the Rule 26 stipulation, it also mentions potential supplemental relief down the line for in addition to the complaint. Yes, Your Honor, but I think that if you read the transcript, the way they talked about that, it might be a separate proceeding in state court at a different time. And I think the point there is if they got the injunctive relief that said Centerline had to become a member, then there would be a question from that point onward that Centerline could have just avoided those damages by just paying the dues from that point forward. But let me ask you something. I mean, it seems to me that when you moved to the action, you argued that there was an amount in controversy of over $300,000. So you seem to think that there was still money in play. And then when you moved for partial summary judgment, you also referred to the amount of money that was involved. And so it seemed like through at least much of this litigation until and in fairness, as I said, the other side expressly disclaimed that it was seeking damages, although it sort of, you know, said, well, we're going to seek them later after we get the declaratory judgment that we want. But in any case, through much of it, you were on notice or at least you believed, whether rightly or wrongly, that they were seeking damages. And then on top of that, you wound up with, I mean, I think Judge Reinhart recessed it for 45 days, but it wound up being 53 days for you to conduct in that first day of trial with all of the damages information that the association had available. So where is the prejudice? Well, Your Honor, I think in that delay, that 45 days, there was no discovery actually taken. We wrote a letter that asked for discovery, and they responded in large part to almost every request that you're not entitled to that. Well, wasn't the discovery that you sought well beyond the damages? I mean, with respect to the damages material, what discovery did you seek that you did not get? Your Honor, I think we wanted the discovery of what other members are charged. One of the things we wanted was we wanted the debit credit memos that were used to create these invoices. Those were destroyed while litigation was pending. We never got to look at them to compare to make sure the numbers lined up. Maybe they do, maybe they don't. We should have been able to look into that. Another thing we didn't get to do is we didn't get the talk of the person who actually generates the invoice. Did you file a motion to compel? No, Your Honor, we didn't file a motion to where you ask for it, they sent you some stuff, they didn't send you other stuff. And then you get to the trial and you don't ask for judge. We filed a motion to compel. We want to do these things. Or can you can you continue the trial more so we can have more discovery? Well, Your Honor, I don't think you have to ask for a continuance or make a motion to compel under rule 37 C. You don't. There's no requirement to do any of that. We're not. First of all, we're not talking about 37 C. At the moment, we're talking about 54 C. Um, but there's certainly no requirement. But if you're trying to we were prejudiced when we didn't ask for more time and we didn't ask the court to use its powers to compel the very documents that we're now saying we were prejudiced by. Well, Your Honor, I think that a motion to compel would have been expensive. And the discovery that we were entitled to is really full discovery on damages the entire gamut of what's available under the federal rules of civil procedure. Um, and it was your choice not to move to compel. I mean, how expensive could it have been if it's right on point and you're already going to trial, which is a pretty expensive endeavor in the first place, and you've got this period in which to conduct discovery that's relevant to the damages. How? I mean, how much extra trouble would it have been to file a motion to compel? I think the expensive trial is part of the prejudice here. We had to show up to trial ready to defend the case that was pleaded and it was disclosed in discovery and ended up basically expensive. Trial is not is not prejudice. If there's if you weren't, there's no prejudice from actual litigation. The prejudice would be if you were disadvantaged to trial, that would be a prejudice. Um, and so I guess that's what I'm trying to figure out. How are you disadvantaged by this? Well, your honor, I think that we weren't able to compare the debit credit memos and no amount of motion practice would have brought them back. They had been. How do we know that, though? I mean, it's because they were. How do we? But But how do we know there wasn't something else that could have stood in its place or that the district court might not have awarded you some type of dispensation for the fact that that there the underlying memos had been destroyed during the litigation. I mean, there are a lot of things that are possible, but unless you move for them, we don't have any way of knowing what would have happened. Well, I think it would be a good time to turn to rule 37 here because I do think that rule 37 permitted exclusion as a remedy and we weren't required to ask for something different. It does say that it could be excused if it's harmless, right? Your honor. And I don't think it was harmless here. But again, under rule 37. So the rule 37 issue, I think you're conflating it a little bit. So I want an unconflate. The rule 37 went specifically to the invoices only. That was the only thing that was found to be a discovery violation, and they admitted we did not turn over the invoices as to whether they're harmless or not. I want to go back to some of the things that judge Rosenbaum asked you because in your notice of removal, you you state that the damages are $270,000. That is presciently close to the 300,000 that the district court ultimately awarded here. And that's because you have the invoices. They were sent to your client. So yes, they weren't provided in discovery. Nobody, nobody says otherwise, at least not till too late. But you client clearly had access to them. That's the basis for which he sought removal from state to federal court. Well, your honor, I think the issue there again is we're looking at prospective what we will have to pay to comply with this injunction in the future versus retrospective what we're already on the floor. But our question is simply, are you prejudiced by the failure to provide these particular documents? Not are my prejudice in the whole litigation or is it harmless in the whole litigation? And it would seem to me that if you had these documents, although technically not turned over, meaning your client, I apologize. I understand your client had these documents yet technically not turned over in discovery. They were turned over. You had 45 days with them. You had the opportunity to have discovery with them and then came to the trial. It's hard to me to say that it's on harmless at that point. But tell me how I'm missing something. Your honor, I don't think giving documents to my client is charged as a disclosure obligation is important reasons. It doesn't as an attorney. I think I had the right to know that you're going to seek this. I shouldn't go ask my client to find out what case you might have brought. I should have the right to defend the case. I don't think anybody is disagreeing with you on that. I completely agree. The problem is the standard requires us to determine whether there was prejudice and and that's the issue. So to the extent that you can show us how you were helpful. Well, your honor, I think you can see the prejudice play out and one of the thing I point out real fast before I go into that is that the burden is on them to show harmlessness under rule 37 C. I don't have to show that we were prejudiced in a 37 C. They have to show that I was not. But if you look at day two of the trial after the discovery was taken, which was no discovery at all, you look at cross examined of Mr Hagedorn and you see all these places where we reached dead ends that we could have pushed further if we had gotten appropriate discovery on page 93. We asked Mr Hagedorn who generates the invoices. He says he's not involved at that level. It's an employee named Vasi Doseva. Doseva was never disclosed before. We didn't get a chance to find out what Doseva knows or whether there were any irregularities in the generation of these invoices on page 100. Hagedorn was disclosed, right? What's that? Hagedorn was disclosed as a witness. Hagedorn was, but when we asked Hagedorn a question, he said, I don't make invoices. I know at trial, but certainly those questions could have been asked at a deposition prior to the second day of trial. Well, the answer would have been the same. I don't know. Right. And at that point you could have sought discovery or sought to depose that witness. We wouldn't have pressed further at that point because we didn't know damages was an issue. I'm talking about after, between the first and second day of trials. So there's no reason why he couldn't have been deposed or you couldn't have asked the trial court to depose him to say what testimony you're going to give for damages. If they mentioned another witness, then depose that witness. Your honor, I think when you reach the point where exclusion is an available remedy under the rules, which I think it clearly is an available remedy under rule 37 C, then that's a far preferable remedy. Right. But here's the problem, right? Exclusion is an available remedy, but it's not the only remedy. And you still have to, there's, there still has to be a finding that it was not harmless. Right. And the problem here is that there's a finding that it was harmless and you know, we, it's not clear to me how it was not harmless. That's the problem. And so, you know, then at that point it is up to the district court as to at once it determines it's not harmless, what it wants to do to address that. It doesn't have to choose to exclude it. It could, but it doesn't have to choose to do it once it's determined that it's harmless. Well, we're getting into the, um, uh, the final time here. So I, I'll, I'll, I'll try and keep this short, but I think the question your honor just raised is the question that was left over by Walker. Um, I don't agree that the district court, um, could choose not to I don't think he could craft a different remedy to mitigate that prejudice. I think at the initial time when he found that there was a disclosure violation on the first day of trial, um, we were definitely harmed at that point. And I think the harm then we would have to, we would, and maybe we will, but we would have to agree with judge Joe flats analysis as opposed to judge Karnes analysis. Judge Karnes didn't disagree. Judge Karnes specifically said that she thought that judge Joe flats standard for harmlessness was probably correct. And the way judge Joe flat would measure harmlessness is not by looking at us. It's looking at the violation, um, as whether it was basically an accident. I don't think anyone contends it was an accident. It was always the strategy not to seek damages. So I think under Joe flat, uh, judge Joe flats, uh, articulation of the harmlessness standard, um, then there was definitely harmed here. And judge Karnes, um, indicated that she agreed with his analysis on that point. Um, but what she did was she said that the court didn't need to reach a positive issue on that case because there was a separate issue. In that case, the defendant had asked for alternative relief, just one more day to prepare for cross examination. Um, so I think if you count votes, there's two votes for judge Joe flats, um, harmlessness standard. And I think under his standard of harmlessness, um, they have not shown harmlessness. Thank you. Thank you. You've saved time for you. Good morning. Good morning, Judge Martin. Colleagues, um, may it please the court. I'm Robert Rivas for the Hunter's Run Property Owners Association, which I'll call the association. Um, if you look at Judge Joe flats dissent that's been referenced in the notice of supplemental authority and try to compare that with this, you find, first of all, he doesn't disagree with the fact that if the, um, failure to disclose under Rule 37 a one was, um, he agrees that it's not necessarily always harmful. And he says that in that particular case, the Rule 26 violation in that case wasn't an honest or harmless mistake. That's a finding of fact that he concluded from reading that case. And it's not hard to understand when you read his opinion or the whole opinion why he reached that conclusion. But he says that that the rule is sort of self executing, right? Once you reach those conclusions, then you ought, then the penalty is automatic. True. That's a minority opinion. But he also agrees that it is not necessarily always true that a nondisclosure is harmful and that a nondisclosure is intentional. Um, and that's what I'm getting at is that, as we argued in the brief, the disclosure that was supposedly a violation of Rule 37. Um, see one in the text of it, as Judge Luck pointed out in the very text of that disclosure, it explains all the facts. There was no surprise. There certainly couldn't be an accusation that it was, uh, an intentional withholding, keeping information secret. Uh, center line was aware all the way through all of the proceedings over and over and over again of the fact that we had a disagreement that I believed. And as I represented in the Rule 26 a disclosures, I was making a distinction between an award of money damages and an award of an injunction that says you shall pay the amounts that you owe. And I thought it would be possible for the trial court to enter not just a declaratory judgment, but an injunction that says you are ordered to pay what it is that you owe. Counsel, can I focus you on a bit of a different issue? Certainly explain to me how Article seven, section two in Article six sections, section six, section six operate together. This is the one that seems to say you can't have damage. You can't have personal damages in the other closet seems to say you can. Well, seem is a kind way to say it. Some might say it does say it. Um, but yes, those are the two that I'm talking about. I think it was a proper exercise of the judge's fact finding and contact contract interpretation. Well, what what language means is generally not a finding of fact intent of what the what the person intended when they wrote it may be a finding of fact. But what it means is not. It's a conclusion of law. Tell me why the magistrate judge's reading of this was a reasonable. Let me ask you this. What reading did he give and why was that reading reasonable? Let me do it that way. He's he's he applied the rule of florida law that in interpreting contracts, every clause must be read in a manner that is that is consistent with the clear intent of the contract and that that a clause that seems to be completely inconsistent with the intent of the entire agreement is not going to be honored as such. It's going to be made to reconcile itself with the rest. In other words, under florida law, you have to try to give everything some meaning if possible. Absolutely. Okay. So how did magistrate do that here and why was that a reasonable way to do it? He said that you that he believed that the that the clause that that seemed to say personal damages against the individual unit owner are not allowed is only referring in context to situations where there's a third party claim. I ask you a question about articulated in the summary judgment. I'm sorry. No, that's okay. I'm sorry you were answering this question. Um, here's where I'm confused. I think maybe if you take that one section and look at it in isolation, maybe what it's saying is you can sue for you can sue if there's not like a lien or something like that or closure I would think or whatever the case may be. But like some kind of a maybe a lien, I don't know. Um, so is there anything about the any of the other parts of the various documents, the bylaws, the declaration, et cetera, that would conflict with that interpretation or require the interpretation that well, I guess first would conflict with that interpretation. And the second part of the question, which is somewhat related, is what in that particular statement of the declaration, that provision of the declaration supports the notion that it means that just third parties can't sue. It was in a clause that seemed to be that was talking about third parties. Uh, for that's the answer to that in court. But there's another reason why that whole argument should be deemed to have been waived. The trial court said, uh, and everybody understood going into the trial that everything that was decided in the summary judgment motion was going to be incorporated into the record at the trial. Uh, and I'm not sure if the judge elaborated in much detail about this, but my understanding in reading the findings of fact and conclusions of law is that he was saying I'm not necessarily going to hold everybody to everything that's in the summary judgment order, but I do require that if you want to say something needs to be retried or tried for the first time in contravention of what's in the summary judgment order, you need to prove that up here at the trial. The problem with that is, again, this doesn't seem to be an issue of finding a fact. This seems to be an issue of how do you interpret potentially irreconcilable provisions of a contract here a declaration? Um, and that seems to be a legal issue, not a factual issue that needs to be tried. Um, and they, the other side presented its way to view this. And as I understand it, it very consistently early on said you shouldn't be able to seek personal damages against us under this clause. You said no because of this other clause. Um, and the trial court made a decision on summary judgment and that that would seem to be appealable from the final judgment that sort of folds in all the other prior rulings into that. So I'm, I have a hard time understanding a waiver argument, but I want to go back to reasonable readings of this. How do you read the language of, of article four section two, which states that all covenants quote run with and bind the property and shall inert to the benefit of, it lists a bunch of people and also includes any owner and then says provided that no owner or any other person or entity shall have any personal liability or in connection with this declaration. Um, how is, how is that limited to just one person or a third party or anybody else? If it's that no owner shall have any liability, wouldn't that include the association and third parties and anybody else? The judge interpreted it as being, uh, intended to refer to third parties in litigation directly between a homeowner and the association to collect the association's dues and the association's assessments and other charges and liabilities to the unit owner. And that's so permeated throughout the declaration in so many ways and so many passages that I think it was a proper interpretation of that clause that, that it would only be referring as the judge ruled to third party claimants or something because it's so clear that the association would collect, uh, dues and assessments against individual unit owners for their failure to pay their dues and assessments. Yeah, but this goes to a remedy. This doesn't go to ability to collect. The, the, as, as Judge Rosenbaum correctly pointed out, and I've done a few condo cases in, in, in my, my short time. Um, the, the remedy generally is a lien on the property. Then the, the unit is foreclosed. And you know how I know that? Because these very units were bought in that very method. A lien was made. Um, the, uh, the, the, the center line, uh, purchased those properties at a foreclosure sale. So that's generally how this is done. That, that seems to be consistent with this provision, which states that you can't seek money damages against an owner of the property. But there's a provision that says you can, right? So Florida statutes also say you can. So how do we reconcile that without rewriting it and saying, yeah, yeah, yeah, we said that, but it only applies to everyone other than the association. Um, I can only offer what the judge ruled and what we argued. Um, let me ask you this. Did you bring your claim in this case under the declaration, under the, the, uh, the statute 723-051 or both? Uh, the predicate for the claim was the statute and the declaration. Right. Um, in other words, for the statute, you have to have a declaration. So you've sued under both. You sued under, they violated the declaration and they violated the statute, right? Okay. Does the statute have a limitation on what you can seek as remedy or damage? The Florida statutes in chapter 720 say that the, the, the, an association can recover an individual judgment and is not obligated to pursue a lien first. Right. So you can get an individual judgment. Yes. Is, is that, could that be an independent source of authority for seeking a judgment irrespective of whatever's in the declaration? Yes, it would be your honor. And did, was the judgment here consistent with both 720-305 and the declaration? I believe it was. Um, a word about prejudice under 54 C. As I've read all the cases and especially international harvester, which both parties until the reply brief and until the notice of supplemental authority. I'm sorry. I may have misspoken. I'm not sure the notice of supplemental authority contained this, is it this issue, but, um, international harvester was agreed by both sides was a leading case in the case that both sides argued from. And I understand international harvester to be saying, and many of the other cases are consistent with this, the ones that are not even cited in the briefs, that prejudice is measured in the context of rule 54 C by whether or not there was evidence put on that wasn't pled for. And the word pled in the context of rule 54 C is properly applied to the allegations of fact in the complaint, not the prayer for relief. So I take those cases to mean if the presumptive prejudice, if evidence was put on in support of an allegation that was never made, then that's prejudice. But the trial court in this case, uh, agreed with us that the word prejudice means evidence is put on, which is, uh, which was not pled for in the allegations of the complaint. And the fact that the relief wasn't sought is not really relevant to that. Um, and I never been a time when center line argued this case or the rule 54 C issue in a manner that was consistent with, uh, with the proper legal analysis of the application of rule 54 C. In that context, center line never has identified, uh, evidence that was put on that wasn't pled for as it relate when using that term only in reference to the factual allegations, uh, and not the not counting what's in the prayer for relief. Center line simply says they didn't pray for damages over and over, and that's automatic prejudice. But it's not because the prejudice comes in because of the failure to plead in the factual allegations. And that's why Judge, um, Reinhart, having addressed this issue so many times throughout the case, said it was baked into the allegations of the complaint that sooner or later, one way or another, center line had to know how much was due. And, um, there was never any doubt about that before the trial, and it wasn't an extension of the pleadings into an unplanned area of the trial into an unplanned area to ask for the relief of, uh, an award of money damages instead of an injunction to pay the exact same amount at the end of the case. And if there are no other questions, I'll leave the rest of my time on the clock. Thank you. Thank you. Thank you, Your Honor. So turning very briefly to the Article six section or Article seven Section two issue, I think Your Honor noted that the district court never explained what Article seven Section two means. If it doesn't mean no owner shall be personally liable. The article says, um, the declaration will only be enforced against owners against the property to land the property. It will not result in personal liability. You agree with me. The Florida law says that where possible, we have to reconcile these things, right? Um, yes, Your Honor. But I'm not. I'm not sure there's any way to reconcile it. But I think one way to reconcile it is if you look at Article seven Section two, um, it says no owner shall be personally liable. Capital owner. It places a category of persons. If you look at Article seven Section four, the enforcement talks about a proceeding and lower equity against any person or persons. So I think you can reconcile them. You say Article seven Section four provides a broad remedy against anybody who violates these covenants. But in the case of the capital owner, which central line is, um, you can't limit your remedies in that specific case. If we're looking at the sort of general specific, wouldn't the general be the sort of general prohibition against all liability, personal liability against an owner? And then Article six has a special carve out for the only the association and only with regard to the defined assessments. No, Your Honor. I think I just disagree on that. I think the broader the broader one is the is Article seven Section four, which applies to an action against any person, I think is broader than that. That's not the inconsistency. The inconsistencies between Article six Section six and in Article seven Section two. That's the inconsistency. Well, Your Honor, I think there might not be a way to reconcile it. And I think there's not a way to reconcile it in the court recognizing its order. Um, on page 14 of document number 1 81. The unresolved ambiguity needs to be resolved against those seeking enforcement. Um, now I'd like to turn for a minute to the international harvester issue. I'm one of the things Mr Revis pointed out is he says our argument has always been about unpleaded relief, but it hasn't been. I think there's an important distinction here. We're not saying you can't get unpleaded relief under Rule 54. We're saying you can't get disclaimed relief. And that was this court's holding in Walker. Now, if you look at the facts of Walker, the plaintiff actually sought declaratory relief, injunctive relief and damages. So there was full discovery on those. They were on notice the entire time in the pretrial document. The plaintiff limited their claim. The court said she narrowed her grocery list of remedies only include monetary relief. So when after trial, she asked for the injunctive relief and declaratory relief, the court said she can't change. And that wasn't because it was unpleaded. That was because it was just because a form of relief was not an abuse of discretion in that case does not mean that it must be imposed in this particular case with some with some dissimilar facts in this case. In other words, there's a broad range. As you point out, when you first started, there's a broad range of discretion. Um, and just because we affirmed exclusion in one case or said it should have been excluded in one case doesn't mean it has to be excluded in every case. I think that's true, Your Honor. But I think the point of the Walker decision, but more importantly, of the Taylor decision is there has to be a limit somewhere. And if you look at Judge Joe flat to dissent and Judge Carnes concurrence, they were both horrified via by the violation in Taylor. Now, the violation in that case was much less egregious than it was here. It was one expert had one new opinion. Um, here it's all of their damages. And Judge Joe Flatton, Judge Carnes were worried about the message that affirmance in that case would send, um, to the bar about their discovery obligations. And I would submit that in this case, if this is not the kind of violation that requires mandatory exclusion or a more severe sanction than you have a few more days to ask for discovery, even if you don't get it, then I think there is no way to abuse discretion under Rule 37. I think Rule 37 simply becomes a suggestion that that well, let me ask you this. I mean, if he had continued with the trial on the second day and not recessed for 45 or actually, as it turned out, I guess, 53 days that might have been an abuse of discretion. So I'm not sure I agree with you that there would be no way to abuse discretion if this isn't an abuse of discretion. We are. I'm out of time. But I'd say that I think that the continuance in this case was functionally the same is doing that because nothing changed in the middle. And what he did is he put the burden on us to not seek remedies under Rule 37 C to go seek a remedy under Rule 37 A. I mean, I think we were entitled under Rule 37 C to that applies to failure to make a disclosure. I don't think the burden should have been shifted us, um, to try and basically take discovery from scratch on a new issue. If nothing else, the prejudice was the fact that we had to take discovery twice. This should have been pleaded. We should have been able to do it once. We should have deposed the witnesses once. We should have made a strategy once. We shouldn't have had to do so on the fly at trial. Um, this is any further questions. I think we have your case. Thank you, Mr Chambers. Yeah.